**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| **BEAU FILLICHIO,** | |
| Plaintiff, | Civil Action No. 19-575 (ZNQ) (TJB) |
| v. | |
| **TOMS RIVER POLICE DEPARTMENT,** *et al.,* | **OPINION** |
| Defendants. | |

**QURAISHI, District Judge**

This matter comes before the Court upon Defendants Toms River Police Department and Officer James Colline and Officer Christophis D. Inglis' Motion for Summary Judgment under Rule 56(a).  (ECF No. 40.)  Alongside the Motion, Defendants submitted a brief in support.  ("Moving Br.," ECF No. 40-1.)  Plaintiff Beau Fillichio filed an opposition.  ("Opp'n Br.," ECF No. 46).  In response, Defendants filed a Letter Reply Brief.  (ECF No. 56.)  The Court has carefully considered the parties' submissions and decides the matter without oral argument pursuant to Federal Rule of Civil Procedure 78 and Local Civil Rule 78.1.  For the following reasons, Defendants' Motion will be GRANTED.

## I.   BACKGROUND AND PROCEDURAL HISTORY

Plaintiff Beau Fillichio ("Plaintiff") is a Florida resident and was a minor at the time of the events that gave rise to this suit.  (Compl. ¶ 1, ECF No.1.)  Defendant Toms River Police Department ("TRPD") is a public entity and is responsible for the protection of persons located within its municipality. (Compl. ¶ 3.)  Defendant Officer James and Defendant Officer Christophis

D. Inglis are employees of the TRPD.  (hereinafter referred to collectively as "Defendants" or "TRPD") (Compl. ¶ 2.)

On January 16, 2019, Plaintiff filed his initial Complaint (ECF No.1), and on February 20, 2019, Plaintiff filed an Amended Complaint.  (ECF No. 7.)  On September 29, 2021, the matter was stayed and administratively terminated, so that all in limine motions could be filed by November 30, 2021.  (ECF No. 37.)  On November 15, 2021, Defendants filed a Motion in Limine. (ECF No. 41.)  Accordingly, before the Court is Defendants' Motion for Summary Judgment seeking judgment on all 8 counts, and Defendants' Motion in Limine.

## II.    <u>UNDISPUTED MATERIAL FACTS</u>

On July 26, 2017, Plaintiff was visiting friends in Toms River, New Jersey, and stayed at a beach house at or near 1833 New Hampshire Avenue, New Jersey.  (*See* Defs'. Statement of Undisputed Facts, ECF No. 40-19, SOUF ¶ 1; *See* Pls's Responsive Statement of Material Facts, ECF No. 55-1; SOUF ¶ 1.)  At some point during the night, a commotion began outside of the beach house, and the Toms River Police Department was called.  (Defs'. SOUF. ¶ 2; Pl's SOUF . ¶ 2.)  Upon police arrival, individuals began to flee, including Plaintiff.  *Id*.  A foot chase ensued, and Plaintiff was subsequently tackled to the ground and apprehended.  (Defs'. SOUF. ¶ 3; Pl's SOUF ¶ 3.)  During the apprehension, a Toms River Police officer bent Plaintiff's right arm backwards and his shoulder became dislocated, resulting in torn tendons.  *Id*.  Plaintiff's injuries required surgery and on August 15, 2017, one was performed to correct Plaintiff's torn labrum and torn rotator cuff on his right shoulder.  (Defs' SOUF ¶5; Pl's SOUF ¶ 5.)

Ultimately, due to the alleged events on July 26, 2017, Plaintiff was charged with violating N.J.S.A 2C:29-1b, Fourth Degree Obstruction of Justice, and N.J.S.A 2C:29-2a(1), Resisting Arrest/ Disorderly Persons.  (Defs'. SOUF. ¶ 26; Pl's SOUF ¶ 26).  On May 2, 2018, Plaintiff pled

guilty to resisting arrest, specifically 2C:29-2(a)(1).  (Defs'. SOUF. ¶ 29; Pl's SOUF ¶ 29.)  To establish a factual proffer for the court, Plaintiff testified that he did resist on arrest on July 26, 2017, and specifically testified that he refused to put his hands behind his back when the officer attempted to arrest him.  (Defs' SOUF ¶¶ 45,52; Pl's SOUF ¶¶ 45,52.)

III.    <u>**LEGAL STANDARD**</u>

A "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A material fact raises a "genuine" dispute "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Williams v. Borough of W. Chester*, 891 F.2d 458, 459 (3d Cir. 1989) (*quoting Anderson*, 477 U.S. at 248).

"In evaluating the evidence, the Court must consider all facts and their logical inferences in the light most favorable to the non-moving party." *Rhodes v. Marix Servicing, LLC*, 302 F. Supp. 3d 656, 661 (D.N.J. 2018) (citing *Curley v. Klem*, 298 F.3d 271, 276-77 (3d Cir. 2002)).  Although the moving party bears the initial burden of proving an absence of a genuine dispute of material fact, meeting this obligation, then shifts the burden to the non-moving party to set forth specific facts showing that there is a genuine dispute.  *Id*. (quoting *Anderson*, 477 U.S. at 250)).  "Unsupported allegations, subjective beliefs, or argument alone . . . cannot forestall summary judgment." *Read v. Profeta*, 397 F. Supp. 3d 597, 625 (D.N.J. 2019).  "Thus, if the nonmoving party fails to make a showing sufficient to establish the existence of an element essential to that party's case . . . there can be no genuine issue of material fact." *Katz v. Aetna Cas. & Sur. Co.*, 972 F.2d 53, 55 (3d Cir. 1992)  Lastly, in assessing the motion, the Court "does not resolve factual

disputes or make credibility determinations." *Rhodes*, 302 F. Supp. 3d at 661 (quoting *Siegel Transfer, Inc. v. Carrier Express, Inc.,* 54 F.3d 1125, 1127 (3d Cir. 1995)).

IV.   **DISCUSSION**

The Court finds that it has federal question subject matter jurisdiction over this matter given Plaintiff's 42 U.S.C. § 1983 claims.   Additionally, it has diversity jurisdiction pursuant to 28 U.S.C. § 1332.

As a preliminary matter, Defendants argue that TRPD is improperly pled in this matter. (Moving Br. at 15–16.)   Within the §1983 context, a municipal department and the municipality are not separate legal entities, thus both cannot be named as parties to an action.   *Bonenberger v. Plymouth Twp.*, 132 F.3d 20, 25 n.4 (3d Cir. 1997); *Adams v. City of Camden*, 461 F. Supp. 2d 263, 266 (D.N.J. 2006) (". . . police departments cannot be sued in conjunction with municipalities, because the police department is merely an administrative arm of the local municipality and is not a separate judicial entity."))   Plaintiff maintains that the authority cited by Defendants prohibits only naming <u>both</u> a Township and its Police Department, not naming only a Police Department as the Complaint properly does in this case.   (Opp'n Br. at 6–7.)   Defendants do not renew their argument on Reply.

The Court has reviewed the cases cited by Defendants, and other similar cases, and agrees with Plaintiff that they do not stand for the proposition that a Police Department cannot be named as a defendant in a § 1983 case.   Those decisions merely bar claims against both a Township and its Police Department in a single suit.   *See, e.g, Padilla v. Twp. of Cherry Hill*, 110 Fed. Appx. 272, 278 (3d Cir. 2004).   Accordingly, Defendants' request to dismiss Toms River Police Department on this basis will be DENIED.

4

### A.  Counts 1–3

Counts 1–3 of the Amended Complaint assert claims against the Toms River Police Department.  Generally, "[a] municipality cannot be held liable for the unconstitutional acts of its employees on a theory of respondeat superior."  *Thomas v. Cumberland Cty.*, 749 F.3d 217, 222 (3d Cir. 2014) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978)).  Here, Plaintiff seeks to establish liability not under *Monell* but pursuant to a "failure or inadequacy by the municipality that "reflects a deliberate or conscious choice." (Opp'n Br. at 11) (citing *Brown v. Muhlenberg Twp.*, 269 F.3d 205, 215 (3d Cir. 2001).  Thus, "[a] plaintiff alleging failure-to-supervise, train, or discipline must show that said failure amounts to deliberate indifference to the constitutional rights of those affected."  *Forrest v. Parry*, 930 F.3d 93, 106 (3d Cir. 2019).  Plaintiff contends that Defendants were deliberately indifferent to the risks presented by failing to adopt and supervise compliance with a community policing approach based on de-escalation and harm reduction.  (Opp'n Br. at 12.)

Plaintiff argues that Defendants often face situations where individuals flee upon police arrival, such that when a particularized suspicion of wrongdoing is absent, police officers should refrain from pursuit.  *Id.*  Plaintiff, however, fails to provide evidence that policymakers knew of the lack of de-escalation tactics within the Toms River Police Department.  Moreover, Plaintiff cites no evidence that there was a pattern of such violations to establish notice within the TRPD. S*ee Noble v. City of Camden*, 112 F. Supp. 3d 208, 221 (D.N.J. 2015).  Accordingly, Plaintiff fails to make a showing sufficient to establish the existence of two elements essential to Counts 1–3. The Court will therefore grant Defendants' motion with respect to Counts 1–3 against TRPD.

## B.  Count 4 – Intentional Infliction of Emotional Distress ("IIED")

Pursuant to the New Jersey Tort Claims Act ("NJTCA"), Defendants argue for dismissal of the IIED claim.  Plaintiff does not respond to this portion of Defendants' Motion.

For a plaintiff "[t]o establish a claim for intentional infliction of emotional distress, a plaintiff is required to establish: (1) that the defendants acted intentionally or recklessly, both in doing the act and in producing emotional distress; (2) that the defendants' conduct was so outrageous in character and extreme in degree as to go beyond all bounds of decency; (3) that the defendants' action were the proximate cause of the emotional distress; and (4) that the emotional distress suffered was so severe that no reasonable person could be expected to endure it."  *Mardini v. Viking Freight, Inc.*, 92 F. Supp. 2d 378, 384 (D.N.J. 1999) (citing *Buckley v. Trenton Sav. Fund Soc'y*, 111 N.J. 355, 366, 544 A.2d 857 (1988)).  Under New Jersey law, to satisfy the fourth element, in addition to alleging severe distress, plaintiffs must assert that they suffered from a specific ailment and sought treatment for it.  *Botts v. N.Y. Times Co.*, Civ. No. 03-1582, 2003 WL 23162315, at *9 (D.N.J. Aug. 29, 2003); *Aly v. Garcia*, 754 A.2d 1232, 1237 (N.J. Super. Ct. App. Div. 2000).

Here, Plaintiff fails to cite to evidence supporting element 4 of an IIED claim, that he sought treatment for his alleged emotional distress.  Therefore, the Court will grant Defendants' motion with respect to Count 4 against TRPD, Officer Colline, and Officer Inglis.

## C.  Count 5 – False Arrest & Count 7 – Malicious Prosecution (both § 1983)

Section 1983 permits private civil actions for damages against any person who, acting under color of state law, deprives another of a right, privilege, or immunity secured by the Constitution or federal law.  *See* 42 U.S.C. § 1983.  A plaintiff must establish (1) a deprivation of a federally protected right and (2) that this deprivation was committed by a person acting under

color of state law.  *See Woloszyn v. County of Lawrence*, 396 F.3d 314, 319 (3d Cir. 2005). Plaintiff raises Fourth Amendment false arrest and malicious prosecution claims against Officer Colline and Officer Ingles.  Defendants seek summary judgment because Plaintiff cannot prove a lack of probable cause, which is required to prevail on both claims.

To state a § 1983 claim for false arrest, a plaintiff must establish: (1) that there was an arrest; and (2) that the arrest was made without probable cause.  *Garlanger v. Verbeke*, 223 F. Supp. 2d 596, 606-07 (D.N.J. 2002).  The central issue in determining liability is whether "the information within the arresting officer's knowledge at the time of the arrest is sufficient to warrant a reasonable law enforcement officer to believe that an offense has been or is being committed by the person to be arrested."  *Paff v. Kaltenbach*, 204 F.3d 425, 436 (3d Cir. 2000) (citation omitted); *see Dowling v. City of Philadelphia*, 855 F.2d 136, 141 (3d Cir. 1988) ("The proper inquiry in a section 1983 claim based on false arrest is not whether the person arrested in fact committed the offense but whether the arresting officers had probable cause to believe the person arrested had committed the offense.")  A court should consider the totality of the circumstances presented, and "must assess the knowledge and information which the officers possessed at the time of arrest, coupled with the factual occurrences immediately precipitating the arrest."  *United States v. Stubbs*, 281 F.3d 109, 122 (3d Cir. 2002).

To state a § 1983 claim for malicious prosecution, a plaintiff must establish that "(1) the defendants initiated a criminal proceeding; (2) the criminal proceeding ended in plaintiff's favor; (3) the proceeding was initiated without probable cause; (4) the defendants acted maliciously or for a purpose other than bringing the plaintiff to justice; and (5) the plaintiff suffered deprivation of liberty consistent with the concept of seizure as a consequence of a legal."  *Estate of Smith v. Marasco*, 318 F.3d 497, 521 (3d Cir. 2003).

As set forth above, on May 2, 2018, Plaintiff pled guilty to the second criminal charge, resisting arrest - 2C:29-2(a)(1), and in exchange, the State dismissed the remaining charge. At the plea hearing, Plaintiff was represented by counsel and testified that he understood the charges against him and the terms of the plea agreement. (Defs' SOUF ¶ 41; Pl's SOUF ¶ 41). Plaintiff testified that no one was pressuring him to enter into the plea of agreement, and thus the court made a finding of fact and a conclusion of law that there was an adequate factual basis placed on the record to support the plea, and that the plea had been entered into knowingly and voluntarily without coercion. (Defs' SOUF ¶ 41,54; Pl's SOUF ¶ 41, 54.). As a result, the court accepted the plea. *Id.*

Applicable to both the false arrest and malicious prosecution claims, the Third Circuit has expressly held that "a guilty plea—even one for a lesser offense—does not permit a later assertion of no probable cause." *Walker v. Clearfield Cnty. Dist. Attorney*, 413 F. App'x 481, 483 (3d Cir. 2011) (citing *Donahue v. Gavin*, 280 F.3d 371, 383 (3d Cir. 2002)). Here, Plaintiff's sworn admission of guilt subsumes a finding of probable cause, such that Plaintiff's arrest and prosecution have already been found to have been made upon a finding of probable cause. Plaintiff has not shown—because he cannot show—that there was no probable cause underlying his arrest or prosecution. This is an essential element for both claims.[1] Accordingly, the Court will grant Defendants' Motion with respect to Counts 5 and 7.

---

[1] Plaintiff's malicious prosecution claim also fails because, in light of his guilty plea, he cannot establish that his criminal proceeding concluded in his favor. *Kossler v. Crisanti*, 564 F.3d 181, 187 (3d Cir. 2009) ("a prior criminal case must have been disposed of in a way that indicates the innocence of the accused in order to satisfy the favorable termination element" of a malicious prosecution claim.)

### D.  Count 6 – Excessive Force (§ 1983)

Insofar as the existence of probable cause does not directly defeat Plaintiff's excessive force claim, the Court considers it separately.  To state a claim for excessive force under § 1983, a plaintiff must show that a 'seizure' of a person occurred and that it was unreasonable.  *Abraham v. Raso*, 183 F.3d 279, 288 (3d Cir. 1999) (citation omitted).  The "reasonableness" inquiry is an objective one, and the "question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation."  *Graham v. Connor*, 490 U.S. 386, 397 (1989).  "The reasonableness of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight."  *Id*. at 396–97 (the underlying intent of the officer is not relevant) (internal citation omitted).

Evaluating the objective reasonableness of the police conduct "requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight."  *Id*. at 396. In this case, summary judgment is appropriate if, "as a matter of law, the evidence would not support a reasonable jury finding that the police officers' actions were objectively unreasonable."  *Groman v. Twp. of Manalapan*, 47 F.3d 628, 634 (3d Cir. 1995).

In his opposition brief, Plaintiff argues that there were three separate distinct instances of excessive force.  (Opp'n Br. at 20.)

#### 1.    Excessive Force When Pursuing

First, Plaintiff contends that "it was *per se* excessive force for the police to engage in a vigorous foot pursuit to conduct a *Terry* stop to ask questions about a game of 'ding dong ditch'

gone awry." *Id.* Defendants respond by interpreting Plaintiff's argument to be that he was unreasonably seized within the meaning of the Fourth Amendment by virtue of the foot pursuit. (Reply at 5–7) ("Here, Plaintiff argues that he was 'seized' within the meaning of the Fourth Amendment when the officers pursued him.")

Plaintiff does not argue that he was unconstitutionally seized in his brief, nor does he plead it in his Amended Complaint. Still, the notions of seizure and excessive force are not unrelated. It is at the point of a "seizure" that the Fourth Amendment standard for excessive force attaches. *See Abraham v. Raso*, 183 F.3d 279, 288 (3d Cir. 1999) ("To state a claim for excessive force as an unreasonable seizure under the Fourth Amendment, a plaintiff must show that a 'seizure' occurred and that it was unreasonable."). A "seizure" occurs when a government official has, "by means of physical force or show of authority, . . . in some way restrained [the plaintiff's] liberty." *Terry v. Ohio*, 392 U.S. 1, 19 n.16 (1968).

Here, the Court need not consider whether the officers' chase of Plaintiff constituted a restraint of his liberty within the meaning of *Terry*, because the Supreme Court has already explicitly held that a foot pursuit does not qualify as a seizure under the Fourth Amendment. *See California v. Hodari D.*, 499 U.S. 621, 629 (1991) ("In sum, assuming that [the officer's] pursuit in the present case constituted a 'show of authority' enjoining [the suspect] to halt, since [he] did not comply with that injunction he was not seized until he was tackled.") Accordingly, the Court concludes that Plaintiff's Fourth Amendment rights were not violated by the officers' pursuit.

## 2. Excessive Force When Taking to Ground and Handcuffing

Plaintiff's opposition brief also questions two other events: (1) "whether it was appropriate for the pursuing officer to slam into [him] full force after [he] had gone to his knees to surrender

himself" and (2) whether Defendants used excessive force when handcuffing him.  (Opp'n Br. at 20).

Plaintiff claims his shoulder injury happened while the officers were trying to handcuff him.  At his deposition, Plaintiff testified that "once I was pinned to the ground, . . . they jerked my arm" and "that's when I started to feel my shoulder hurt."  (Plf. Dep. Tr. 42:10–14, attached as Exhibit E to Defendant's Motion for Summary Judgment, ECF No. 40-7).

On factual grounds, Defendants deny that their attempts to handcuff Plaintiff caused his shoulder injury.[2]  (Defs' CRSOUF ¶¶127,129.)  They assert his injury instead happened while he was fleeing from officers when he fell hard onto the street with his arm outstretched, then got back up and continued running.  Officer Irvine's report from the night of the incident states that:

> From a short distance, I observed Ptl Worth pursuing a male suspect, later identified as Beau T. Fillichio, north bound on New Hampshire.  Prior to exiting my vehicle, I observed Mr. Fillichio trip and fall onto the street while running from Ptl Worth.  He was able to get back up and ran back towards 1833 New Hampshire, where I lost sight of him.

(Officer Report for Case 17-42201 at 6, attached as Exhibit B, ECF No. 40-4).  Plaintiff does not challenge Officer Irvine's report.

To connect the fall onto the street with the shoulder injury, Defendants cite a statement Plaintiff made himself, less than a week after the incident, to his treating physician, Dr. Francis K. Moll, III, M.D.  Defendants attach to their Motion a copy of Dr. Moll's treatment notes, dated August 3, 2017, which include the following:

> Patient's description of injury: Patient states that he recently fell forward with his right dominant should abduction/external rotated, hit hard, injuring his right shoulder.

---

[2] On legal grounds, Defendants assert qualified immunity and that Plaintiff has not demonstrated that the force employed by Officer Colline and Officer Inglis was excessive in violation of the Fourth Amendment.  (Moving Br. at 30–38.)  For reasons set forth below, the Court does not reach Defendants' legal defenses.

(Exhibit G at 1, ECF No. 40-9).

Plaintiff acknowledges only that the quoted statement prepared by Dr. Moll was made as a summary of his visit with Plaintiff. (Plf RSOUF ¶¶93–94.) He argues that the report does not quote Plaintiff, and even if it did, those quotes would be inadmissible hearsay. (*Id*.) He also asserts that "[i]f Defendants wanted to know exactly what Plaintiff said during his appointment with Doctor Moll, they should have deposed him."

Setting aside whose burden it may have been to take further discovery from Doctor Moll, it is clear that the cited portion of his treatment notes is admissible. As Defendants seek to use it, it is indeed an out of court statement being offered as evidence to prove the truth of the matter asserted in the statement, but it falls within the well-recognized exception for statements made for medical diagnosis or treatment under Fed. R. Civ. 803(4). *See, e.g.*, *Smith v. City of Philadelphia*, Civ. No. 06-4312, 2009 WL 3353148, at *4 (E.D. Pa. Oct. 19, 2009) ("The standard for determining whether statements may properly be admitted under the Rule 803(4) exception is: 'whether statements were made for the purpose of securing medical treatment; whether they were reasonably pertinent to such treatment, and whether they were reasonably relied upon for treatment.'") Here, Plaintiff conveyed the information to Dr. Moll for the purpose of securing medical treatment, and the Court can reasonably conclude that the circumstances of Plaintiff's injury were both relevant to that treatment as well as taken into consideration by Dr. Moll, particularly given that he chose to make specific note of it.

Plaintiff's factual support for causation of his injury is therefore cast in the untenable position of standing entirely alone against the mutually corroborating report of Officer Ingles and

Plaintiff's own contradictory and nearly contemporaneous statements as summarized by Dr. Moll.[3] Under these circumstances, the Court finds that no reasonable jury could find that his injury was caused as he claims. *Jordan v. Cicchi*, Civ. NO. 10-4398, 2014 WL 2009089, at *2 (D.N.J. May 16, 2014) ("the issue is not whether Plaintiff has relied solely on his own testimony to challenge [a summary judgment motion], but whether Plaintiff's testimony, when juxtaposed with the other evidence, is sufficient for a rational factfinder to credit Plaintiff's testimony, despite its self-serving nature."); *Johnson v. MetLife Bank, N.A.*, 883 F.Supp.2d 542, 549 (E.D. Pa. 2012); *Scott v. Harris*, 550 U.S. 372, 380 (2007) ("When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of facts for the purposes of ruling on a motion for summary judgment*."); Irving v. Chester Water Auth.*, 439 F. App'x 125, 127 (3d Cir. 2011) (holding that "self-serving deposition testimony is insufficient to raise a genuine issue of material fact."); *Synthes, Inc. v. Emerge Med., Inc.*, 25 F. Supp. 3d 617, 672 (E.D. Pa. 2014) (same); *Danois v. i3 Archive, Inc.*, 2013 U.S. Dist. LEXIS 98105, at *28–29, 2013 WL 3556083 (E.D. Pa. Jul. 12, 2013) (finding that plaintiffs' reliance on their self-serving deposition testimony cannot create an issue of fact on summary judgment since "the Third Circuit has extended to deposition testimony the principle that conclusory, self-serving affidavits are insufficient to withstand a motion for summary judgment.") (interior quotations and citations omitted).  The Court therefore concludes that Defendants are entitled to summary judgment as to Count 6.

---

[3] Unsurprisingly, Plaintiff's expert report supports his claim that his injury was caused during the arrest.  It does not, however, assert that his injury could <u>not</u> have happened as Defendants claim.  In fact, Plaintiff's expert report does not even mention much less consider Plaintiff's fall as an alternative cause for his injuries.  By contrast, Defendants' rebuttal expert report considers both the fall and the officers' alleged arm twisting and opines that the injury happened as Defendants assert and that it could <u>not</u> have happened as Plaintiff claims.

### E.  Count 8 – Punitive Damages

"The purpose of punitive damages is to punish the defendant for his willful or malicious conduct and to deter others from similar behavior." *Memphis Community School Dist. v. Stachura*, 477 U.S. 299, 306 (1986).  "A jury may be permitted to assess punitive damages in an action under § 1983 when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others." *Smith v. Wade*, 461 U.S. 30, 56, (1983).  Under New Jersey's Punitive Damages Act, in determining whether punitive damages are to be awarded, the trier of fact shall consider all relevant evidence.  N.J.S.A. 2A:15-5.12(b)

Given the Court's conclusions with respect to the underling violations alleged, it further concludes that summary judgment in Defendants' favor with respect to Plaintiff's claim for punitive damages is also appropriate.

## V.   **CONCLUSION**

For the foregoing reasons, the Court will GRANT Defendants' Motion for Summary Judgment (ECF No. 40) and enter Judgment in their favor.  In light of this decision, the Court will also DENY AS MOOT their Motion in Limine (ECF No. 41).  An appropriate Order will follow.

Date: **November 30, 2022**

s/ Zahid N. Quraishi
**ZAHID N. QURAISHI**
**UNITED STATES DISTRICT JUDGE**